[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, Bruce L. Stevens, commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by complaint returnable to this court on July 20, 1993. He also seeks a fair and equitable property settlement and other relief as on file.
The defendant wife, Kathy M. Stevens, filed an answer. In her cross complaint, she also alleges that the marriage has broken down irretrievably and seeks its dissolution. She seeks alimony, an equitable distribution of the marital assets, and other relief as on file.
The parties were represented by counsel throughout the proceedings and stipulated in writing that their marriage had broken down irretrievably. Each party testified and submitted financial affidavits and written proposed orders. Documentary materials were introduced into evidence, including a tax return, pension and social security benefit statements, bank and credit card records, etc. At the close of the evidence, the court requested, inter alia, that the parties file a stipulation relating to the disposition and taxability of certain proceeds from the sale of the plaintiff's home, and continued the case to March 1, 1995, on which date the hearing was deemed to be closed.
From the evidence, I find the following facts.
The plaintiff husband married the defendant wife in New London, Connecticut, on August 27, 1983. Her birth name was Kathy M. Troubetaris. The plaintiff has resided continuously CT Page 1891 in this state for more than one year immediately before the date of the complaint. There are no minor children issue of the marriage, and none were born to the wife since the marriage. Neither party is a recipient of public assistance, and all statutory stays have expired. The court has jurisdiction.
The plaintiff is 52 years old, a high school graduate with some college, and has been disabled from working since 1988. He suffered a major heart attack in 1984, requiring hospitalization and surgery, and a massive one in 1988. He has not worked since; however, he is ambulatory, and appears to engage in many everyday activities. At the time of his second heart attack, he was a group vice president of a company providing engineering training services to naval personnel and was earning in excess of $90,000 per year. He takes a number of medications daily. Presently, the medications are fully covered by insurance. When COBRA coverage expires, and he goes on Medicare, he will be required to directly pay for the medications. Their cost is substantial.
He now receives $269 per week in social security benefits, and $1,290 weekly in disability insurance benefits, for a gross of $1,559 per week, and a net, after state and federal income taxes, of $1,096 per week. The disability insurance was purchased by his employer, and his benefits will terminate upon his death, age 65 or restoration of his ability to work.
The wife is 52 years of age, a high school graduate; she appears to be in good physical health. She had a benign ovarian tumor surgically removed. During her adult years, she had outside employment as an assembly line worker for a total of one year. Her earnings were minimal. She appears to suffer from emotional problems, maintains a post office box, but no fixed residence. She has not looked for employment since the parties separated in July, 1993; nor has she sought vocational or other training or education. She moves from one child's home to another's (of her former marriages), and lives with each for a while; at times, she stays in a motel.
The wife's first husband died in Vietnam; her second marriage ended in divorce. She had three children from the marriages; they are adults. The husband's first marriage ended in divorce; his children from that marriage are adults. CT Page 1892
This marriage of over 11 years duration was troubled by a number of factors. These included the parties' intensive gambling activities; the wife's emotional condition and her refusal to seek treatment for it; her inability to relate to, or get along with, the husband's children, the wife's poor relationship with her oldest daughter, who left home at age 16; the husband's two heart attacks, and their after effects; the parties' failure to communicate with each other; and the husband's friendship with a gambling associate he met at the Foxwoods Casino, which evolved into a sexual relationship that continues to the present. The parties separated in July, 1993, and have remained separated since, although they have carried on a sporadic sexual relationship.
The husband attempted to persuade the wife to participate in counseling with him. She refused, either for her marriage or for herself, because she did not wish `to discuss private matters'. On this evidence, I find the marriage has broken down irretrievably, and that the responsibility for its destruction must be equally shared.
The husband holds the lion's share of the assets in his name, which were largely accumulated as a result of his earnings and from the sale of his former home. These include bank accounts of $6,581; a money market fund of $11,597; funds held in escrow of $100,452,[1] representing the net proceeds from the sale of his home at 8 Village Court, East Lyme, Connecticut, on June 10, 1994; life insurance cash value of $5,257; a pension from his Electric Boat employment, which will provide him with $65 per month at age 65; a four-thirteenths interest in a general partnership and a fractional interest in a limited partnership which operates a retirement home or complex in Ohio. He also has an automobile valued at $2,800.
The general partnership owns and operates a commercial building, with a single tenant, whose lease expires shortly. Until some months ago, the plaintiff received about $1,000 per month in rental income from this investment. The plaintiff testified that the building was specially designed for this tenant who will not exercise its option to extend the lease. Although the tenant continues to pay the rent, the partnership ceased distributing the net rental income to its partners; rather, it is reserving the income in a `contingency fund' which would allow it to `carry' and perhaps renovate the CT Page 1893 building for a new tenant when the present tenant vacates. The plaintiff claims a `negative equity' in this building because he is jointly and severally liable on the note and mortgage indebtedness which he believes exceeds the value of the building. Although this may very well be so, I find this claim speculative.
He assigns no present value to the limited partnership interest, which he purchased as a tax shelter, and the defendant's counsel appears to agree with its present valuation. However, the investment fulfilled the plaintiff's income tax shelter objective, and is operational, and may have value in the long term. In any event, the defendant claims no interest in it and seeks no portion of it.[2]
The plaintiff also has an automobile valued at $2,600 and household furniture, furnishings and personal property which are unvalued by him, but constitute most of the items which were in the marital dwelling.
The wife reports her automobile worth $3,500, household furniture and jewelry of $6,000, her IDEX fund of $5,000, an IRA of $1,110 and $4,500 in cash. She will receive social security benefits (presumably based on the plaintiff's earnings) of $447.40 per month payable at her age 62 and $591 per month at her age 65.
The Idex fund of $5,000 is the residue of $10,000 life insurance proceeds she received as a result of her first husband's death. The $4,500 cash is the residue of a $10,000 inheritance received from her father who died in 1993. Her IRA was funded by the plaintiff.
Against these assets, the husband reports $55,891[3] in liabilities, including the capital gain tax liabilities above referred to. The remainder are credit card account balances, mostly incurred as a result of gambling. This has cost the parties in excess of $100,000, most of which was incurred by the husband.
The wife reports $6,655 in liabilities of which $6,500 is for attorney's fees. She acknowledges a federal and state income tax liability for 1994, on account of the $300 per week pendente lite alimony order received by her, which she has neither calculated or estimated. CT Page 1894
The plaintiff's monetary contributions to the acquisition, preservation and appreciation of the marital assets far exceeded the wife's monetary contributions. He paid for almost all of the family bills and expenses. She received child support of $300 per month for the younger two children, reduced to $150 per month when the older became 18. She also received about $500 per month in social security benefits for her oldest child during the first few years of the marriage. Most of these funds were used by her for her children and for discretionary spending, including purchases of food and household items for the family. Their nonmonetary contributions were about equal.
The plaintiff has substantial weekly income; this, together with his partnership interests, gives him a far greater opportunity than the wife has to acquire capital assets and income in the future, so long as he can control his gambling problem.
The wife has minimum earning capacity, if any at all, considering her bizarre and unconventional life style, and refusal to obtain any treatment for her emotional problems. The husband argues that he be required to pay the wife `time limited' alimony for a two-year period only. He asserts that this would provide her an opportunity to obtain vocational skills or training to attain self sufficiency.
The husband has provided no evidence as to what training or special skills she could acquire, or how long it would take her to acquire them in order for her to become self supporting. There was also no evidence as what level of earning capacity the defendant could attain which would allow her to become self supporting. See Ippolito v. Ippolito, 28 Conn. App. 745, 752; cert. denied, 224 Conn. 905 (1992).
The defendant seeks time-limited alimony until November 6, 2006, her 62nd birthday, the earliest date her social security benefits go into pay status. She presently claims a shortfall between her weekly expenses and her income, even though the plaintiff pays her car and health insurance premiums. However, I find some of her basic expenses, such as food, rent and storage could be substantially reduced or eliminated, if she found permanent living quarters. Thus, even taking into account the taxability of her income and her CT Page 1895 failure to provide for income taxes due, either by estimation or deduction, I find her claimed shortfall unreasonably high.
I have considered all of the criteria in General Statutes §§ 46b-62, 46b-81 and 46b-82 in the light of the evidence and findings, and the taxable consequences, in the determination of the financial awards set forth below.
Accordingly, judgment may enter dissolving the marriage on the ground of irretrievable breakdown. It is also ordered that:
(1) The plaintiff shall pay to the defendant as periodic alimony the sum of $300 per week for one year, then $325 per week until September 6, 2004, which shall sooner terminate upon the death of either party, the wife's remarriage or pursuant to General Statutes § 46b-86(b). Said alimony shall not be otherwise modifiable as to duration and shall be taxable income to the defendant and deductible by the plaintiff. Said alimony payments shall be secured by immediate garnishment of plaintiff's disability income.
(2) As additional periodic alimony, the plaintiff shall pay the health insurance premium of $47 per week on the defendant's behalf until the expiration of the COBRA coverage, anticipated to be one year from date; this obligation shall also terminate on the death of either party, or the wife's remarriage, or the availability to the defendant of employment related health insurance.
(3) The court finds that the defendant is in need of support, and that the periodic and additional alimony payments ordered are actually in the nature of alimony. They shall not be affected by discharge in bankruptcy, if sought by the plaintiff.
(4) The plaintiff shall take and have the following assets, which are assigned to him free of any claims of the defendant: the 1988 Buick motor vehicle and his bank accounts; his Kemper and Chelsea money market funds (except as set forth in paragraph (5) below); his Massachusetts Mutual and John Hancock life insurance policies; his Electric Boat pension benefits; and his BLS Associates and Oakleaf/Toledo Ltd. partnership interests; and the tangible personal property in his possession and Pacific Mutual life insurance policy, except CT Page 1896 as set forth below. The order restraining the plaintiff from disposing of any of his assets is vacated.
(5) The defendant wife shall take and have the following assets, which are assigned to her, free of any claims of the plaintiff. Her 1985 Cadillac, the tangible personal property now in her possession; her IDEX fund; her IRA account; and her cash on hand; the sum of $17,500 from the plaintiff's Chelsea money market fund; four (4) place settings from the wedding dishes; the brown and tan striped recliner; clock radio/cassette player with blue numbers; a grandfather clock and her skis and boots.
(6) Each shall pay the liabilities shown on their respective financial affidavits; the plaintiff shall be solely responsible for any credit card balances and the 1994 capital gains tax liabilities, state and federal. The defendant shall be solely responsible for any state and federal income taxes due on her 1994 income.
(7) So long as plaintiff is obligated to pay periodic alimony hereunder, he shall irrevocably designate defendant as sole beneficiary of his Pacific Mutual life insurance policy with face amount proceeds of $188,000. He shall execute and deliver an authorization to her so that she may from time to time determine the status of the policy.
(8) The plaintiff shall pay toward the defendant's attorney's fees the sum of $2,000 within thirty (30) days hereof, as a denial of counsel fees to her would impair or undermine the other financial awards entered.
(9) The plaintiff shall pay the defendant's automobile insurance premiums through March 31, 1995.
(10) All documents incidental or necessary to effectuate the orders herein shall be completed and exchanged, together with the transfer of personal property, within thirty (30) days hereof.
Teller, J.